The next argument is in Appeal No. 07-7029, Jandreau v. Department of Veterans Affairs. Mr. Jandreau asked the Court to reverse the holding of the Veterans Court that he is not competent to testify that he suffered a dislocated shoulder while he was on active duty. I didn't understand his testimony or his buddy's testimony to be excluded. I understood it to be held insufficient to carry his burden of proof. I think that's correct. And it seems to me the heart of your brief is in the middle of page 14, referring to the blue brief, where you say at the end of a paragraph that because of the loss of the record, the result should be that, quote, the claimant's burden of proof is relaxed, period, end quote. Now, as I understand it from the statute, the plaintiff's burden of proof is preponderant evidence. So if I'm understanding you correctly on page 14, you're asking the Court to lower that to something less than a preponderance. Am I right so far? Not precisely, Your Honor. As this Court noted in its recent promo decision, the Congress and the VA have both taken action to make it somewhat easier for veterans whose records were destroyed in the fire at the programs. But that's what I'm trying to ask you. You're asking us to get in the same game that Congress and the Secretary have been in on particular points by relaxing the burden of proof. And I'm trying to understand exactly what do you mean by relaxing the burden of proof. If it's a preponderance, in the case of lost records, you want us to change the burden of proof from a preponderance to what? Your Honor, the phrase relax the burden of proof may have been somewhat imprecise. What we said in our brief and what we're saying here is that VA and Congress have both made clear that lay evidence is sufficient to prove veterans' claim for service connection, particularly Not always. Sometimes it is and sometimes it isn't. If it's a medical diagnosis, normally it isn't sufficient. Well, and that's part of the problem. The Court of Appeals for Veterans Claims and the Board of Veterans Appeals seem to think that the evidence provided by Mr. Jandred and by Mr. Burnham was submitted for the purpose of establishing a diagnosis or a medical nexus between his present disability, which is undisputed, and an injury in service. And that's incorrect. I still don't understand what you want relaxed. You say burden of proof, and then when I pressed you, you said, well, maybe relaxed wasn't the perfect word. But I'm still groping to understand precisely what it is you think that the law should be. What burden should a veteran have to carry, any veteran, not just this veteran, any veteran, in this circumstance where the record's burned up in Missouri? And perhaps beyond that, in other cases where records are lost. Let me ask you. There's a general rule of evidence that where one party has documents that are destroyed, under some circumstances that can lead to an adverse inference that benefits the other party. It seems to me that what you're trying to do is to fit yourself within that principle of evidence law. And the research that we've done suggests to me that the rule is if the documents are intentionally destroyed, you get an adverse inference. Okay? You're not contending that that's true. There are cases in some circuits that suggest that if they're negligently destroyed, that can lead to an adverse inference. Are you contending that these records were destroyed by the government through negligence? We have no evidence of negligence. I can't say that they weren't. I can say that there's no evidence of that. What I am saying is that whereas here, the government was in absolute possession of the only medical records which would establish this claim. And by the way, I would point out that when Mr. Jandrew filed his claim, he did not come to the Department of Veterans Affairs and said, Here is my lay evidence. Please accept it. He filed a claim in which he said, I was treated at the hospital at Fort Dix, New Jersey, for a shoulder disability or a separated shoulder. I'd like to have service connection for my shoulder, which now hurts. It wasn't until after VA notified him that those records had been destroyed that he then said, Okay, I'll look for some other evidence. Now, his claim, he said, I had a separated shoulder. So he's making an assertion in his claim that he had a separated shoulder in service. Mr. Burnham comes in and says, Well, I saw him about that time we were in service together. He was in great pain. What we're saying is that where a veteran comes forward with the only evidence that's available, and that evidence is credible, there's been no finding that he's not credible, it is not contradicted by anything in the record, and the government has no adverse evidence. He's done precisely what Congress said in 5107 and what VA says in its regulation 3.303A. And furthermore, the VA sends him a letter, says, Please send us some evidence. And by the way, among the things that you can send is some lay evidence. He does that, and the answer is no. So doesn't your case really depend on where on the spectrum he falls between medical facts, we'll call them, which are readily discernible and reportable by a lay person, such as a compound fracture. I mean, the bone was sticking through the skin. That's pretty good evidence of a compound fracture, and it doesn't take somebody who's had a residency in orthopedics to tell. On the other hand, gosh, I felt ill. In fact, I felt that I had pancreatic cancer. No, we wouldn't accept that. All right, so dislocated shoulder is sort of in that gray zone, it seems to me. I mean, there are certain, you know, one can get into anecdotal evidence, but I think every one of us in high school probably thought when you got hit by some big guy that you dislocated your shoulder, and it turns out you just got a bruise. You know, it's the kind of thing that is, in an extreme case, it looks pretty clear to a reasonably well-educated lay person that there's something seriously wrong, and maybe it's a dislocation, but it's something that an orthopedist could identify. The minute you walk into the office, it isn't necessarily something that a lay person could identify. Now, doesn't your case really depend on our accepting the notion that dislocated shoulder is something that falls within lay competence? Yes. All right. Good short answer to a much longer question than it should have been. I have two reasons why the court should accept that. Number one, Mr. Jandreau, fully expected when he filed his claim, he knew he had been to the hospital at Fort Dix, New Jersey. I don't think it's reasonable to conclude that he made up out of cold cloth, oh, by the way, when you pull those records, which he didn't know had been destroyed, you're not going to find my dislocated shoulder. He made that assertion. He had every expectation that that's what those records show. Well, the government isn't faulting his processing of his claim, any representation he made, his conduct at any point from when he entered the service until today. So all of what you say is true, but that's not the basis on which the government is resisting your suggestion to change the law. Well, the reason is, well, the law, I think, is on his side with respect to lay evidence. I think the question really is whether the court below was correct in saying you've got to have a diagnosis of this dislocated shoulder. Isn't that a fact question? I mean, the problem is that would seem to me to be a fact question, whether having had a dislocated shoulder I'm not unsympathetic to the veteran's views. I knew it. But it does seem to me it's a fact question, and that's not for us to decide whether lay evidence of a dislocation is sufficient or insufficient. The problem that strikes me, and I hope the government will address this, is that the CABC decision here seems to be infected with this CALUSA standard, which was disapproved by us in Buchanan. What's your view about that? Well, I think that's correct, but with respect to the dislocated shoulder, there's something else that needs, a couple of things that need to be said. First of all, the only evidence that we have, unfortunately, is a dictionary, a medical dictionary of dislocated shoulder and some dicta from a dissent in the Higgins case. And they tell us that a dislocated shoulder is simply a bone where it's not supposed to be. Mr. Jandrew is perfectly capable as a layman, not dissimilar from the compound fracture, of looking at his shoulder and saying it's not supposed to be here. So he is competent from his own senses to recognize that. Second of all, we're told, again, in both the majority opinion and the dissent in Higgins, that a dislocated shoulder results in immense, I believe is the word that's used, immense pain. And we have Mr. Burnham saying this man is in immense pain. What we're saying is, where he comes forward with the only- Well, actually, the significant thing is that a dislocated shoulder, once you put it back in the socket, stops hurting. So you can argue from that that someone would know that it was a dislocation rather than something else. It's possible. The only statement, I take it, that we have in the record by Mr. Jandrew is his statement on A101. And the sentence is, while in basic training, I dislocated my right shoulder at which time I was examined at the medical clinic where they took x-rays and put my arm in a sling. That's it, right? Just one other thing, Your Honor. Besides the buddy statement. I'm sorry? Besides the buddy statement, right? One more thing. I have a record at 19 where he files his claim with the Department of Veterans Affairs and in Block 17 says, dislocated right shoulder in basic training. Okay, but I mean the description is the one that appears in the January 13, 2003 letter. That is correct. I mean, what I was looking for and didn't find was something which he would have been fully capable of saying, which is I dislocated my shoulder and the doctor said, or I injured my shoulder and the doctor said you've dislocated your shoulder. Here's what we can do for you. Or the consequence of the x-ray was. It would seem to me that, I mean, this is maybe quibbling over words that a lay person isn't likely to put in a letter like this. But still what's missing here is even the suggestion that a doctor somewhere described this as a dislocated shoulder. We really have to trust, and whether this is a fact question or not, we really have to trust his word on this. Because we don't have the, except perhaps the inference that the fact that he went to the clinic and he still thinks it was dislocated means that that was the diagnosis. Well, again, as I said just a moment ago, with respect to the claim, when he filed the claim, he did not know the records had been destroyed. So if he comes in and says, I dislocated my shoulder, and then the records show something else, I think it makes him, it puts him in a pretty bad position. I think the inference to be drawn is when he thought those records were available, would be obtained by VA, that he had every expectation that they would show precisely what he claimed, and that was what happened in service. Is it open to him at this point, given all the rules of finality and so forth, is it open to him, absent, let's say, a remand in this case, to make a further elaboration of the statement that he has here in the January 13th letter? Absent a remand from this court, he could come in with new evidence. He could get a further statement. He could make the elaboration that Your Honor just described. What he loses at that point is years of benefits. He filed this claim in 97, and of course, he would give up his entitlement to all of those benefits. We're simply saying that Congress in 5107, VA in 3.303A, and in its M21-1, say take the lay evidence, take the statement from friends in service, and VA says to Mr. Jandrud, bring that evidence. He does, and then they say, no, you can't tell that your shoulder is in the wrong position. If he had rephrased his statement and simply said, I injured my shoulder, we would not be here today. It's an unfortunate phraseology that courts have held, the court below has held, that veterans are certainly competent to say that they suffered an injury. Mr. Jandrud's problem was he tried to tell VA what actually happened, and that's what should not be affirmed. Thank you. Thank you. Ms. Ota. Good afternoon. Good afternoon. Welcome. May it please the Court. Help us out. The primary legal issue in this case involves the appropriate burden of proof for establishing service connection. Well, maybe not. That's what I thought the issue was, but Mr. Smith seems to be saying not quite. Oh, yes, Your Honor, because he understands full well that he has to distinguish this case from the Cromer case. Well, he's not arguing for an inference, so he's not asking us to ignore Cromer and find an adverse interest. He's asking us instead, it seems, to rule that lay evidence in a circumstance like this can suffice, contrary to what Judge Green held. That doesn't violate Cromer. It might violate something else, but it doesn't violate Cromer, does it? Your Honor, however he phrases it, I believe Cromer is on all fours. Cromer was a presumption, which is different than here. I don't understand. How can that be on all fours? Put aside the destruction of the records. He's saying that even putting aside the destruction of the records, lay evidence should be considered when it's about an observable medical condition like a dislocated shoulder. I find it astonishing that you don't discuss the Buchanan case in your brief, because it seems to me it's a pretty good argument that the decision of the Court of Appeals for Veterans Claims here is not consistent with Buchanan. Because it's saying that in terms of a medical diagnosis, lay evidence cannot be considered. And Buchanan seems to say the opposite. My understanding of Buchanan, Your Honor, is that you have to presume the credibility of the veteran's lay statement, but not necessarily the competency of the statement. So yes, it is the law that a veteran can testify as to observations. In certain circumstances, the recitation of those observations might be sufficient for a medical diagnosis made by a physician crediting those observations. But that isn't what the situation is here. There was no description of the injury made by the veteran to a medical physician, upon which the medical physician might say, what you describe is precisely the observations and the symptoms one would see in a dislocated shoulder. So then you're saying that in every case, under every factual circumstance, a doctor's testimony would be needed. No. Well, you said it three times. I thought that's exactly what you were saying. If that's not what you were saying, we better get this in focus here, because we're not going to get very far if we can't figure out what each other are saying. Well, in the extreme case the Court pointed out, where it's a compound fracture, again, the observations of the compound fracture, a veteran can testify to. But you seem to be saying, based on such a self-description, a doctor would have to say, yes, that's a compound fracture. I thought Judge Bryson was suggesting that no, no doctor's testimony would be needed in that circumstance, because it is so clear when the bone is sticking out of the skin that it is a compound fracture, and that a layperson alone is sufficient testimony to establish that. I think that the layperson can testify as to the observations. So then you are saying that a doctor's confirmation of the layperson's description is always required. Isn't that directly contrary to Buchanan, where the holding of the Court has stated, quote, the Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence? That what you're saying is directly contrary to that, isn't it? Your Honor, in the case of the compound fracture, which isn't the case before us, perhaps that is correct, that the Board could accept just the observations to establish the diagnosis, obviously not to establish the time of the fracture without other evidence, or most importantly, the nexus. The problem here is that the dislocated shoulder is on this continuum where a layperson isn't competent to testify that that is the diagnosis. What's your basis of saying that? I mean, you're not a witness. You're not giving a deposition. You're giving an argument. So when you say a layperson is never competent to diagnose a separated shoulder, what's your evidence for that? What medical record are you relying on in this case that establishes that only a physician can recognize a shoulder dislocation? Well, the Board clearly found that there are other clauses for some of the symptoms which we demonstrated in a dislocated shoulder. In this case, we have no evidence of exactly what observations were made by either Mr. Burnham or by the veteran. But the problem is that the Board's decision doesn't rest on the notion that a dislocated shoulder is difficult to diagnose. It rests, as I read it, on the proposition that medical evidence for the diagnosis is always required. Am I wrong about that? I don't think that that was the gravamen of the decision, Your Honor. I think the assumption was he did have a dislocated shoulder. The problem was there was no medical evidence connecting a dislocated shoulder in the service to his present medical condition. That's not correct, because on page four of the Court of Appeals for Veterans Claims decision, toward the bottom two-thirds of the page, it says whether he experienced a dislocation of his shoulders requires medical diagnosis. That's the specific holding. That is not the holding as you stated it. I recognize I made this statement, Your Honor, but I think that if you read the decision in its entirety, that what was troubling was that Dr. Snell did not state that the dislocated shoulder, which was reported by the veteran, was incurred in service, which was a critical fact. So the nexus between the in-service injury and the present condition was not established. Well, wasn't the basis for the non-establishment of the nexus simply the non-establishment of the original injury? I mean, there was evidence from the doctor that this is a residual of a dislocated shoulder, and that was not disputed. OK, so we already know he's had a dislocation at some point, and the argument then is, well, was this the dislocation possibly that occurred in the service? And as to that, it seems to me, as I read what the court said, what the section that Judge Dyke read, the answer the court gave is to say, well, Mr. Jandreau is not competent to testify as to whether he experienced a dislocation, even though he is competent to testify about his pain and other circumstances, which may or may not be right. But that does seem to be the predicate of their conclusion that there was no nexus, right? I think the other more important predicate is that there was nothing in the medical record of Dr. Snell who related a shoulder dislocation to the present condition that indicated it was service connection. Furthermore, even the fact that somebody reports to a physician, I had a dislocated shoulder, is not evidence that the board of the Court of Veterans' Appeals has to accept. Suppose that there had been a medical diagnosis of separated shoulder back in service. There was an unimpeachable diagnosis, dislocated shoulder. And we have all the same evidence. I mean, this case certainly wouldn't have been disposed of in the same fashion. It may have come out the same way. But you wouldn't argue that the problem with his expertise, his competence to testify as to diagnosis, was irrelevant to the outcome, right? Correct, Your Honor. So that's pretty much seemed to me dispositive of the way the Court of Appeals of Veterans' Claims looked at this case. I mean, you're saying, well, but there was no real proof of nexus. Well, if you had the fact resolved of the dislocation, that'd be pretty much it, wouldn't it? Dislocation in service. In service. And that would pretty much take him a very long way towards getting his benefits, right? Then the only argument would be, well, maybe there was a different dislocation later or earlier that was really the causation for his current problem. Yes, Your Honor. But that's not, as I understand it, what the court was saying. The court was saying, you haven't shown that you had a dislocation in service. You lose, right? That's correct, Your Honor. And the reason you haven't shown it is because you're not competent to self-diagnose. And the only evidence there is evidence of self-diagnosis. That is correct, Your Honor. But it is also correct that if he sought medical treatment subsequent to service and he described with specificity the symptoms, what happened in the intervening 40 years, that a physician could say that those symptoms, those observations you have made, can only be explained by a dislocated shoulder. Or he might say they could be explained by three different etiologies and I don't know which one it is. So it's not as though the veteran doesn't have a remedy. But he's got to show that he had a dislocation in the service. There are no medical records available. The question is whether lay evidence can satisfy that burden. The Court of Appeals for Veterans Claims says no. And that's clearly wrong, right, under Buchanan. Yes, Your Honor. But I think that the VA did not question the veteran's credibility with respect to an in-service injury to his shoulder. Wait a minute. You said yes to Judge Dyke's question. I thought the government's position is to say no to that in response to that question. I don't think you understood the question, or at least I would have expected you to give a different answer. The question is does the law require Buchanan in the current state of the law require that the CAVC say that he is, if I understood the question at least correctly, require that the CAVC say that he is competent to give lay evidence as to the diagnosis of shoulder dislocation, right? And I thought the government's position is that it is no. That is correct, Your Honor. Well, isn't that inconsistent with Buchanan? I don't think that Buchanan should be read that a lay person may testify with respect to any medical diagnosis. That's not the question. The question is, that's a fact question as to whether this testimony should be credited on the question of whether there was a dislocation. But as I read the Court of Appeals for Veterans claims, it doesn't cite Buchanan. It seems to say the diagnosis cannot be by lay evidence. That's not consistent with Buchanan, is it? You're correct, Your Honor. But clearly, the Veterans Court could look at Buchanan and still look at the same evidence in this case and come to the conclusion in this case, this person is not competent to make this medical diagnosis. It requires a physician to make that diagnosis. What's the basis? Pardon? What's the basis of saying that this diagnosis could only be made by a physician? I'm only responding to the hypothetical. Well, it's not a hypothetical because the phraseology that Judge Dyke earlier read from the final paragraph at the bottom of page 4 of Judge Green's opinion seems quite unequivocal when it says, quote, whether he, meaning the veteran, experienced a dislocation of his shoulder requires a medical diagnosis. And it's clear from the context that Judge Green is saying unless a physician says so, there is no legally acceptable, legally adequate proof. And I'm saying what's the basis of Judge Green saying that? The only basis he seems to cite are two Veterans Court cases, Lano and Espiritu, which I take to say something quite different. So where is he getting this? Where is Judge Green getting the foundation to say that a shoulder dislocation can never be self-diagnosed by a layperson? I think that the Espiritu and Lano cases, as I read them, stand for the proposition that a layperson is not competent to testify as to the medical diagnosis. I think one case was bronchial asthma. And so he's using those cases as support for his position, which is a fact. But the problem is that every condition or injury or disease falls at a different point on the Judge Bryson spectrum from those like compound fracture, where a layperson clearly can diagnose what it is, to the other extreme where only a highly specialized physician, not even an ordinary physician, would have any chance of diagnosing it. So the issue always is where on the spectrum does it fall? So when Judge Green cites two cases that fall on a different part of the spectrum to say that this self-diagnosis of shoulder separation is legally unacceptable, he's just making it up. Well, Your Honor, the only evidence in the record was an injury which caused the veteran to go to the medical clinic where his arm was put into a sling and he had no duty for one week and he was on light duty. I didn't understand that's what the veteran said. I understood the veteran to say I dislocated my shoulder and then went to the base hospital. I'm talking about the observations to which he was clearly competent to testify. Suppose that he had said in his statement, I went to the base hospital, I saw an orthopedist. The orthopedist said you have a dislocated shoulder and did x-rays which the orthopedist told me confirmed that. Period. End of statement. Sufficient? No, Your Honor. No? No. You want direct evidence from a physician in every case. That's the bottom line. Why is that not sufficient? It's obviously hearsay evidence and so that can be considered along with all the other evidence. Yeah. So why isn't it sufficient? You've just told me that it's hearsay but that isn't a barrier. What's the problem? No, it is not a barrier but it's just another fact that when the board or the court is making a factual determination as to credibility, they can take it to account. Wait a minute. We're talking about two different things here. Credibility and competence. I thought that if you're saying the board could conclude that he's a liar, sure, the board could always make that conclusion but there's no suggestion here that the board thinks the man is lying. The board is simply saying he's just not competent to make that judgment. That's correct. My hypothetical is he comes in with evidence reported, albeit not on a piece of paper that's signed by the physician, but he says this is what the physician told me. Now that certainly would get, wouldn't that be competent evidence setting aside hearsay? Your Honor, it would be more evidence than what he presented but there's no reason why when he saw the physician, I mean, you know, 40 years later or 35 years later, that he didn't report his observations of exactly what happened and we don't know what those observations would have been. They may have been observations upon which a physician could say you had a bad bruise or you had a ruptured ligament or you had a dislocated shoulder. It sounds to me as though you're saying that somebody whose records were destroyed is out of luck in every case. No, on the contrary, Your Honor, I'm not saying that at all. I'm saying... Well, how's he supposed to prove what happened at the time? You said to Judge Bryson that he can't report his own diagnosis. You said he can't rely on what the physician told him. The records are destroyed. How can he possibly prove his case? By seeing the physician after the fact and describing his observations, both visual and the pain, he can describe everything that happened and the physician might say there is only one diagnosis one could make based on that litany of symptoms and observations. It's a very factual determination, but certainly the veteran is not precluded simply because his records were destroyed in a fire. But you think that that evidence of that much long after the fact, conclusion drawn by a doctor based on his report and his recollection of symptoms would be better evidence than his own report of what the doctor who had him with his shoulder hanging out and looked at him and said, that's a dislocated shoulder, you think it's better evidence? I think it's, yes, I do think it's better evidence. Setting aside credibility, assume that the board looks at this guy and said, we have never seen a more truthful person in our lives. This guy is absolutely telling the truth and it's the gold standard of credibility. But in terms of competence, you think that that evidence is not as good? Why? Well, clearly the board would be able to grant service-connected benefits. But I'm troubled by your digging in your heels on my example. What it is about my example that's bothering you, that is giving you reservations about saying, sure, if he can come in with evidence that a doctor said he has a dislocated shoulder, why isn't your answer to that, then of course that's good, solid evidence. Because I think that what we are talking about is, however you want to call it, presumption, changing the burden of proof, making it easier, whatever rule this court comes out with obviously will be applicable to everybody, not just this one situation. So I think it's very hard from an evidentiary point of view to carve out a dislocated shoulder. I'm not asking you to carve it out. My example would apply to everything, including pancreatic cancer. If he came in and he said, I went to an oncologist, and the oncologist said, you, he wouldn't be seeking benefits now, but here's what the oncologist told me, that would be the same kind of evidence. I'm just trying to see whether in the absence of paper, and we're talking about a category of cases in which by definition we don't have the paper, a report of what the diagnosing physician said would be a substitute. And I'm not getting you saying sure, and I don't know why. Your Honor, the number of veterans that were affected by this fire is obviously enormous, given the percentage of records that were destroyed in that fire. And 35 years have elapsed. So Congress had ample opportunity to address this issue, and they could have said exactly what you're saying. If somebody credibly reports that a diagnosis was made while they were in service and the records were destroyed, Congress could have done that. The VA could have done it. It's the same rationale that you've set forth in Cromer. Why it is improper for this court to step in when there is not a statutory or constitutional imperative. Well, the answer I suppose would be, if in Espiritu and Reno the Veterans Court has misstated the law, it's our job to correct Veterans Court misstatements of law. That has nothing to do with whether Congress alternatively could have come up with a solution, or the Secretary alternatively could have come up with a solution. If the law in Judge Greene's opinion is misstated, it's manifestly our job to correct that. Isn't it? Yes, Your Honor. Well, then I don't understand how we're out of our jurisdiction to judge the correctness of the legal statements that appear on page four of Judge Greene's opinion. Your Honor, I think as this Court found in Cromer, what the Veteran is seeking here is a change in the burden of proof. I think you're not understanding something. I think our questions are directed to the general run of cases and don't really depend on the existence of the fire. I don't think we're suggesting to you a different rule for fire situations. I think Judge Bryson's question would be just as meaningful if there had been no fire and the Veteran were coming in and saying, I was told that I had a dislocated shoulder. By a physician at the Bay Hospital. By a physician. So the question is, fire or no fire, why isn't that evidence that he suffered a dislocation? Well, the broader question is not just the dislocated shoulder, it is the diagnosis that was given by... Same question. Right. And I think that that goes to clearly the medical diagnosis to which the layperson isn't competent to testify. But he's not testifying about his own diagnosis. He's testifying about a competent physician's diagnosis. Yes. Albeit in hearsay fashion. Right. I understand that, Your Honor. But the Veteran could mishear the diagnosis. There could have been a differential diagnosis involving multiple scenarios, and he only hears one. So to say that all a Veteran needs to establish the fact of the injury and the diagnosis of the injury is merely his recitation of what he believes he heard a physician say many, many years ago, I think is not a rule of law that this Court should find. But everything you've just said seems to bear quite heavily on credibility. And it might provide a basis for the Board to say, we just don't believe him. We think he actually totally fabricated the story. He never went to the Bay Hospital. He never had a dislocated shoulder. Everything he told Dr. Snell 40 years later is totally fabricated. If there's some basis for saying he's lying, that's one thing. But the issue is confidence of a certain type of testimony, not probative force, not credibility. Competence. What you seem to be arguing for is a rule of law that the Veteran can't recover without a medical diagnosis. And as I read Buchanan, we explicitly rejected that. And I have a very hard time understanding how you can argue that in the light of Buchanan. Are you arguing that he needs a medical diagnosis in all cases? Yes. No, you were arguing a minute ago that if he has a compound fracture, he doesn't have to have a medical diagnosis. But if a physician could testify with those observations, then it is a medical diagnosis by that physician on that basis. It's still a physician's diagnosis. So you are saying that in every case, there has to be some physician who gives a diagnosis. It can be on that physician's own tests or observations, or it can be on what the Veteran told the physician, but the physician has to write a report making a diagnosis or the Veteran always loses. Yes or no? In between. Or there is evidence in the record that these types of observations conclusively lead to this diagnosis. But there has to be something in the record that would link the two. And in some cases, like the compound fracture, it may be common knowledge, but it has to be something. For a dislocated shoulder, it would have to be some medical evidence that these observations always are going to lead to or are very likely to lead to a diagnosis of a dislocated shoulder and not some other type of injury. Let me ask you a dumb question here. Who employs Dr. Snell? I believe he was a private physician. I don't believe he was a... Do you mean was he employed by the government? Yes. My understanding is that in May of 2002, the Veteran went to see Dr. Snell and then referred him to an orthopedic... So all three of the doctors whose opinions in recent years we have were private physicians? That's my understanding. Okay, that's helpful. I was confused about that. Well, we've given you a lot of extra time. I asked you a lot of questions. I think we have your position fairly well in mind. Let's let Mr. Smith have some rebuttal. Period. Clearly a Veteran or anyone else is competent to testify to what someone else told them. It's hearsay and generally not admissible. But when the only evidence of what the other person said is unavailable, it's an exception to the hearsay rule. Now, the government has a complete defense in Mr. Jandro's case if it goes to the records center, finds his records, and they have no evidence that what he said was correct. Or, as Chief Judge Michel points out, the board makes a finding that there's no evidence against him, but this is just so outlandish we don't believe him, he has no credibility. Absent that, when the government has lost the records, and I urge you, as I know you will, to consider that there are many other cases where records are unavailable. There are literally thousands and thousands of VA claims files which cannot be found as we are here this afternoon. Mr. Smith, have you made, that is, has the Disabled American Veterans Organization made to the Secretary or the Congress the sort of plea that you're making in your briefs here? No, we have not. If the court has any questions. Thank you both. We'll take the case under advisement. All rise.